UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------------------X
In re

Clean Air Car Service & Parking Branch Two, LLC
and Operr Plaza, LLC,

                                  Debtors.

------------------------------------------------------------------X

Chapter 11

Case No. 23-41937-nhl
(jointly administered)

<u>DECISION</u>

Appearances:

Thomas A. Draghi, Esq.
Westerman Ball Ederer Miller
Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, NY 11556
Counsel for the Debtors

Paul S. Samson, Esq.
Alissa L. Poynor, Esq.
Riemer & Braunstein LLP
Times Square Tower, Suite 2506
Seven Times Square
New York, NY 10036
Counsel for IV-CVCF NEB 1 Trust and
IV-CVCF NEB REO, LLC

Kevin S. Wang, Esq.
Wood Wang & Associates, PLLC
33-70 Prince St., Suite 703
Flushing, NY 11354
Counsel for Kevin S. Wang, Clean Air
Car Service & Parking Corp., Clean Air
Service & Parking Branch Three, LLC,
Operr Technologies Inc., and
Operr Service Bureau Inc.

NANCY HERSHEY LORD
United States Bankruptcy Judge

This matter comes before the Court on the joint motions of the debtors, Clean Air Car Service & Parking Branch Two, LLC ("Clean Air 2") and Operr Plaza, LLC ("Operr Plaza," and, together with Clean Air 2, the "Debtors"), IV CVCF NEB 1 Trust (the "Lender"), and IV CVCF NEB REO, LLC (the "Sole Member," and collectively with the Debtors and the Lender, the "Movants") seeking (1) sanctions against Kevin Wang ("Mr. Wang"), David Wood ("Mr. Wood"), Wood Wang & Associates, PLLC (the "Law Firm"), Clean Air Car Service & Parking Branch Three ("Clean Air 3"), Clean Air Car Service and Parking Corporation ("CA Car Service"), Operr Technologies Group, Inc. ("Operr Tech"), and Operr Service Bureau, Inc. ("Operr Service," and, together with Clean Air 3, CA Car Service, Operr Tech, and Operr Service, the "Wang Entities," and the Wang Entities together with Mr. Wang and the Law Firm, the "Respondents") pursuant to the Court's inherent powers and pursuant to 28 U.S.C. § 1927 for repeatedly and vexatiously raising frivolous arguments that were previously rejected; and (2) sanctions against the Respondents pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for filing a motion to dismiss these bankruptcy cases under 11 U.S.C. § 305 based on those arguments.[1]  The Respondents opposed both motions.

At a hearing held on July 29, 2024, the Court granted the Motions and directed the Movants to supplement the record with the amount of fees and costs incurred as a result of the sanctionable conduct.  This decision elaborates on the reasoning for the Court's ruling at the July 29, 2024 hearing and determines the sanctions to be imposed.

<u>JURISDICTION</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by

---

[1] Mr. Wood was relieved as counsel to Mr. Wang and the Wang Entities, and the Movants are no longer pursuing the motions against Mr. Wood.

order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(1), (b)(2)(A) and (b)(2)(O).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

BACKGROUND

The following reflects the relevant background of these cases, undisputed facts, or are matters of which judicial notice may be taken.

On May 31, 2023, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  The petitions were signed on behalf of the Debtors by Bill Wang in his capacity as treasurer of each Debtor.  The corporate resolutions authorizing, among other things, the filing of the petitions was executed by Kenneth Vitkin in his capacity as executive vice president of the Sole Member.

On June 8, 2023, the Debtors filed a motion to jointly administer their bankruptcy cases.

On June 22, 2023, the Debtors filed applications to retain Westerman Ball Ederer Miller Zucker & Sharfstein, LLP as their counsel and to retain CBRE, Inc. as their real estate broker (together, the "Retention Applications").

On June 26, 2023, Mr. Wood, as counsel to Mr. Wang and the Wang Entities, filed a letter in response to the Debtors' motion for joint administration stating that, although not opposing joint administration, Mr. Wang's position is that the bankruptcy petitions were filed without authorization because Mr. Wood holds the managerial rights under the Debtors' operating agreements, and reserving Mr. Wang's right to seek dismissal of the bankruptcy cases on that basis.  A hearing on the motion for joint administration was held on June 27, 2023, and the Court did not address Mr. Wang's position on the merits as it was not an objection to the joint

administration of the cases.  On June 30, 2023, the Court issued an order authorizing the joint administration of the Debtors' bankruptcy cases.  (ECF No. 32.)[2]

On June 30, 2023, the Debtors filed a motion for approval of a stipulation with the Lender authorizing the Debtors to use cash collateral and providing for adequate protection (the "Cash Collateral Motion").  (ECF No. 31.)

On July 10, 2023, Mr. Wang, by counsel Mr. Wood, filed objections to the Debtors' Retention Applications asserting the following arguments (1) that the cases were filed by an unauthorized person on behalf of the Debtors, and that Mr. Wang is the sole managing member of the Debtors; (2) that, based on the operating agreements of the Debtors, the Sole Member, which purchased Mr. Wang's membership interests at a UCC sale after the Debtors defaulted on the loan owed to the Lender, "has no managerial rights and 'shall only have the rights of an Assignee, and shall have no right to become a Member, or to participate in the management of the business and affairs of the Company as a Member or Manager under any circumstances, and shall be entitled only to receive the share of profits and losses, and the return of capital (if any), to which the Member would otherwise have been entitled'" (the "Managerial Rights Argument"); (3) that Mr. Wang has the right to buy back his interests at any time for 50% of the book value of either or both of the Debtors (the "Buyback Right Argument"); (4) that the Sole Member used a false address to gain venue in state court in connection with a state court action (the "Venue Argument"); (5) that the Lender and the Sole Member acted in bad faith and "set a 'trap' to steal" the membership interests in the Debtors by refusing to permit reserve funds to be used to repair the roof, causing the Debtors to be unable to refinance the underlying loan; (6) that Mr. Wang's membership interests in the Debtors were sold for $100,000 at the UCC sale, but the mortgage

---

[2] Citations to "ECF No. []" are to documents filed on the docket of the lead case, Case No. 23-41937, identified by docket entry number.

remained on the properties, thereby depreciating assets of the Debtors and the guarantors, so that the Lender can seek the deficiency against the borrowers and guarantors; (7) that the Lender and Sole Member colluded and precluded other bidders, including Mr. Wang, from bidding at the UCC sale of his membership interests in the Debtors; (8) that the UCC sale was conducted in a commercially unreasonable manner; (9) that the Lender and Sole Member violated public policy by manipulating the UCC sale; (10) that there are pending actions in New York state court involving the parties and, because unresolved issues exist, creditors cannot pursue any involuntary bankruptcies against Mr. Wang.  (ECF Nos. 37, 38.)  In the opposition, Mr. Wang stated that he would file a motion to dismiss the bankruptcy cases.  (Id.)  Mr. Wang filed an affidavit in support of the opposition.  (ECF Nos. 37-1, 38-1.)

On July 11, 2023, Mr. Wang, by counsel Mr. Wood, filed an objection to the Cash Collateral Motion, asserting the Managerial Rights Argument, and further arguing that the bankruptcy cases were filed in bad faith.  (ECF No. 40.)  Mr. Wang filed an affidavit in support of the opposition.  (ECF Nos. 40-1.)  The opposition to the Retention Applications and the Cash Collateral Motion requested that the bankruptcy cases be stayed until Mr. Wang's motion to dismiss the cases is adjudicated.  (ECF No. 37, 38, 40.)  However, Mr. Wang had not yet filed a motion to dismiss these bankruptcy cases.

The Debtors filed a reply on July 14, 2023, asserting that Mr. Wang's objections raised issues that were not properly before the Court, nor did they constitute a basis to deny the Retention Applications or the Cash Collateral Motion.  (ECF No. 48.)  Additionally, and importantly, the Debtors argued that Mr. Wang relinquished his managerial rights under the pledge and security agreements and the amended operating agreements, and that Mr. Wang's argument regarding his managerial rights in the Debtors was already considered and rejected in

New York state court in an action commenced by the Debtors and the Sole Member.  In that action against Mr. Wang, the Debtors and the Sole Member sought an injunction directing Mr. Wang to turn over the Debtors' books and records.  (Id.)  Specifically, on July 22, 2021, Justice Schecter of the New York State Supreme Court, New York County, ruled as follows:

> After denying [Mr. Wang]'s motion to enjoin the foreclosure sale in the related action, IV-CVCF NEB I Trust (the Lender) foreclosed upon and IV-CVCF NEB REO, LLC (the [Sole] Member) acquired [Mr. Wang]'s 100% membership interest in the LLCs.  Indeed, in urging the court that he would be irreparably harmed if the court did not enjoin the Lender from foreclosing, [Mr. Wang] admitted he would lose the two properties.  [Mr. Wang] now contends, however, that the LLCs' original operating agreements limit the [Sole] Member to obtaining a non-controlling economic interest and not full membership rights.  Not so.  On the contrary, in connection with the underlying loan, [Mr. Wang] executed pledge agreements in which he agreed to amend the operating agreements such that a foreclosure would result in him giving up "all voting, consent, managerial and other rights relating to the Pledged Equity Interests", and resigning from the LLCs.  [Mr. Wang]'s reliance on § 6.4 of the operating agreements, which limit turnover rights in an action to enforce a monetary judgment (permitting only a charging order) is misplaced.  That provision has no applicability where, as here, the owner of 100% of the equity of an LLC pledges his entire interest to secure a loan; where [Mr. Wang], who was the only member of the LLCs who could be aggrieved (there are no other members who would be prejudiced by involuntary association with a new managing member); and, most significantly, where [Mr. Wang] executed subsequent pledge agreements in consideration for the loan giving up his rights in the LLCs upon foreclosure.  Nor can [Mr. Wang] avail himself of the buyback rights under § 6.4, which permit a member to buy back his economic interest under certain circumstances because [Mr. Wang] is no longer a member.
> [Mr. Wang] no longer has any interests in the LLCs or rights under their operating agreements, and certainly cannot continue to withhold their books and records or act on their behalf.  His refusal to turn over the records and permit plaintiffs to take over their management in accordance with the very agreements he made would irreparably harm plaintiffs' control rights.  For the same reason the balance of the equities strongly favors plaintiffs.

(Id. at ¶ 10; See ECF No. 146-2 (state court docket citations omitted).)

The Debtors further noted that the state court awarded summary judgment in that action, reiterating that Mr. Wang "no longer owns the LLCs" and that Mr. Wang "ha[d] not submitted any admissible evidence or analysis questioning the soundness of the July 22, 2021 order."  (ECF No. 48 at ¶ 11; <u>See</u> ECF No. 146-3.)  Additionally, the Debtors asserted that any argument challenging the Sole Member's authority to file the bankruptcy petitions on behalf of the Debtors was barred by the <u>Rooker-Feldman</u> doctrine and, in any event, the arguments fail on the merits, which would be briefed by the Debtors if Mr. Wang files a motion to dismiss.  (ECF No. 48 at ¶¶ 17- 28.)

On July 14, 2023, the Lender and Sole Member filed a joinder to the Debtors' reply, and further asserted that the Managerial Rights Argument was also rejected in Mr. Wang's state court action seeking an injunction of the Lender's UCC Sale of Mr. Wang's membership interests in the Debtors.  (ECF No. 49.)

On July 18, 2024, the Court held a hearing on the Retention Applications and the Cash Collateral Motion.  At the hearing, the Court overruled Mr. Wang's objections because they were not properly before the Bankruptcy Court, they were already ruled upon by the state court, and they did not constitute a basis to deny the Retention Applications or the Cash Collateral Motion.  (Tr. 7/18/24 at 24-26, ECF No. 132.)[3]  The Court also cautioned Mr. Wood, as counsel to Mr. Wang, about raising meritless arguments and to be mindful of Rule 11.  (Tr. 7/18/24 at 25, ECF No. 132.)  Thereafter, on July 26, 2023, the Court issued the orders authorizing the retention of the Debtors' attorney and accountant, as well as the order approving the cash collateral stipulation.  (ECF Nos. 58, 59, 60.)

---

[3] "Tr." refers to the transcript of the hearing held on the date indicated.

On August 4, 2023, the Debtors filed a motion to sell their respective real property (the "Sale Motion").  (ECF No. 61.)

On August 11, 2023, Clean Air 2 filed a motion pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Motion") to obtain documents from Clean Air 3, one of Mr. Wang's entities.  (ECF No. 63.)

On August 21, 2023, Mr. Wang and the Wang Entities, by counsel Mr. Wood, filed opposition to the Sale Motion and a cross motion to dismiss the cases or, alternatively, for relief from the stay to permit the prosecution of an appeal of one of the state court actions.  (ECF No. 69.)  Mr. Wang filed an affidavit in support of the objection and the cross-motion.  (ECF No. 69-2.)  The next day, on August 22, 2023, Mr. Wang and the Wang Entities, by Mr. Wood, filed additional opposition to the Sale Motion and a cross-motion for relief from the automatic stay, as well as opposition to the Rule 2004 Motion and yet another cross-motion for relief from the automatic stay, together with a request to stay the bankruptcy cases.  (ECF Nos. 70, 71, 72.)

In those filings, Mr. Wang and the Wang Entities asserted, again, that the bankruptcy cases were filed in bad faith, and that the bankruptcy petitions were not properly authorized, but acknowledged that the "issues of membership, managerial, and buy-back rights have already been disputed" in state court and are currently subject to a pending appeal.  (ECF Nos. 69-1 at ¶¶ 18-20; ECF No. 70-1 at 15, 16 (incorporating the arguments made in ECF No. 69); ECF No. 72 at 4-5 (asserting bad faith and incorporating arguments raised in ECF Nos. 69 and 70).)  In furtherance of this argument, in his affidavit in support, Mr. Wang challenged the manner in which the Lender conducted the UCC sale of his interests in the Debtors, and asserted that, because his interests in the Debtors were involuntarily transferred after his unsuccessful attempt to enjoin the UCC sale, he remained the managing member of each Debtor.  (ECF No. 69-2 at ¶¶

17-21).  Mr. Wang and the Wang Entities further argued that the Debtors' operating agreements do not permit the sale of the properties because the Debtors' sole purpose was to hold the properties, not to sell them.  (ECF Nos. 69-1 at ¶¶ 33, 34; ECF No. 70-1 at 15, 16 (incorporating the argument made in ECF 69); ECF No. 72 at 5 (incorporating arguments raised in ECF Nos. 69 and 70).)

On August 25, 2023, the Debtors opposed the cross-motion, asserting (1) that this Court and the state court already ruled on the Managerial Rights Argument; (2) dismissal of the cases and relief from the stay cannot be raised by way of cross-motion, without providing proper notice; and (3) that there was no basis to deny the Sale Motion or the Rule 2004 Motion.  (ECF No. 76.)  On August 25, 2023, the Sole Member and Lender filed a joinder to the Debtor's response.  (ECF No. 81.)

A hearing on the Sale Motion and the Rule 2004 Motion was held on August 29, 2023, at which the Court rejected the cross-motion to dismiss the cases because it did not give the required notice for a motion to dismiss, and because the cross-motion repeated the already rejected Managerial Rights Argument and did not raise any valid reason to deny the Sale Motion or the Rule 2004 Motion.  (Tr. 8/29/23 at 29-30, ECF No. 135.)  At the hearing, the Court again informed Mr. Wood, as counsel to Mr. Wang and the Wang Entities, that a motion to dismiss the bankruptcy cases may be filed on proper notice, assuming there were grounds for such relief, and cautioned that the previously rejected arguments, i.e., the Managerial Rights Argument, were not proper grounds.  (Tr. 8/29/23 at 31, ECF No. 135.)  Orders were subsequently issued on the Debtors' Sale Motion and the Rule 2004 Motion.  (ECF Nos. 99, 113.)

On August 31, 2023, a consent to change counsel was filed for Mr. Wang, removing Mr. Wood as counsel to Mr. Wang, leaving Mr. Wang *pro se*.[4]  (ECF No. 93.)

On September 11, 2023, more than three months after the petitions were filed, Mr. Wang and the Wang Entities, by Mr. Wang as counsel, filed a motion to dismiss these cases pursuant to Section 1112(b) or, alternatively, for relief from the automatic stay with respect to the Debtors' real properties (the "Dismissal/Lift Stay Motion").  (ECF No. 100.)  In the motion, Mr. Wang also sought relief from the automatic stay to permit the New York State Appellate Division, Second Department to decide a pending appeal.  Mr. Wang and the Wang Entities asserted, among other things, the Managerial Rights Argument, the Venue Argument, and that the Debtors filed these cases in bad faith.  (ECF No. 100-2 at ¶¶ 8, 10, 30.)  Mr. Wang and the Wang Entities contended that the State Court's determination that Mr. Wang no longer held a membership interest in the Debtors was "completely wrong."  (ECF No. 100-2 at ¶ 18.)

The following day, on September 12, 2023, Mr. Wang filed another motion for relief from the automatic stay with respect to the Debtors' properties and with respect to a different appeal pending before the New York State Appellate Division, First Department (the "Second Lift Stay Motion").  (ECF No. 101.)  In support of that motion, Mr. Wang asserted, among other things, the Managerial Rights Argument, the Venue Argument, and that the petitions were filed in bad faith, and argued that any disputes regarding the managerial rights should be adjudicated in state court.  (ECF No. 101-3.)

On October 9, 2023, the Debtors responded to the Dismissal/Lift Stay Motion and the Second Lift Stay Motion, arguing that the Managerial Rights Argument was already rejected and asserting that the cases were filed in good faith with the Lender's consent to complete an orderly

---

[4] An order relieving Mr. Wood as counsel to Mr. Wang was issued on September 28, 2023.  (ECF No. 129.)  The Court notes that Mr. Wang is an attorney admitted to practice law in New York.

liquidation of assets, and not for the purpose of avoiding state court litigation. (ECF No. 140 at ¶¶ 44-71.) The Debtors opposed dismissal of the cases but consented to limited relief of the automatic stay to permit the prosecution of the pending appeals in the New York State Appellate Division. (ECF No. 140 at ¶ 73.) The Sole Member and Lender also responded to the Dismissal/Lift Stay Motion and the Second Lift Stay Motion, objecting to the dismissal of the cases, but did not object to limited relief from the automatic stay with respect to the state court appeals. (ECF Nos. 143-146.) In the opposition to dismissal, the Lender and Sole Member asserted, among other things, that in an action commenced by the Sole Member to compel Mr. Wang to turn over the Debtors' books and records, the New York State court ruled that Mr. Wang no longer owned the Debtors. (ECF No. 143 at ¶¶ 3, 4.) As such, they contended that any argument to the contrary is barred by collateral estoppel. (ECF No. 143 at ¶¶ 2, 6.)

On October 13, 2023, Mr. Wang and the Wang Entities filed a reply, asserting that the issues of managerial rights and amendments to the operating agreements have not been decided by final order of the state court, are not barred by the Rooker-Feldman doctrine or collateral estoppel, and are ripe for a determination by this Court. (ECF No. 149.)

On October 17, 2023, the Court held a hearing on, among other things, the Dismissal/Lift Stay Motion and the Second Lift Stay Motion. The Court denied the Dismissal/Lift Stay motion to the extent it sought dismissal, ruling that the New York state court already rejected the Managerial Rights Argument and the Venue Argument, and that collateral estoppel prevents this Court from reviewing the state court's determination that Mr. Wang no longer has any membership or managerial interests in the Debtors. (Tr. 10/17/23 at 31-33, ECF No. 161.) The Court further noted that the operating agreements relied upon by Mr. Wang do not support his position and warned that "it may very well be that this repeated assertion with respect to

managerial rights and venue argument could be sanctionable" because, in the Court's view, "it clearly lacks factual and legal basis." (Tr. 10/17/23 at 34, ECF No. 161.)  On November 4, 2023, the Court issued the order denying dismissal of the case.[5]

On December 15, 2023, the Debtors, the Sole Member, and the Lender filed this joint motion for sanctions under the Court's inherent power and pursuant to 28 U.S.C. § 1927 (the "First Sanctions Motion"), alleging that the Respondents "have continuously engaged in vexatious, baseless, repetitive and dilatory practices before this Court in a malicious effort to cause delays; to obstruct these proceedings; to increase costs for the Lender, the Sole Member, the Debtors; and to burden and interfere with this Court's administration of these Bankruptcy Court Proceedings." (ECF No. 196-2 at 1.)  The Respondents filed an objection on January 2, 2024 (ECF No. 223), and, on January 29, 2024, the Movants filed a reply (ECF No. 240).  Oral argument on the First Sanctions Motion was heard on February 1, 2024 and February 14, 2024, and the hearing was adjourned from time to time.

On February 2, 2024, after these cases had been pending for eight months, and after the auction results of the Debtors' respective properties were confirmed at a hearing, but prior to the entry of the orders confirming the sales, Mr. Wang and the Wang Entities, by Mr. Wang as counsel, filed an application for an order to show cause on an "emergency" motion to dismiss or suspend all proceedings in these cases pursuant to 11 U.S.C. § 305(a)(1) (the "305 Dismissal Motion").  (ECF No. 242).  Notably, Mr. Wang and the Wang Entities filed the 305 Dismissal Motion after the District Court denied their motion for leave to appeal this Court's order denying their Dismissal/Lift Stay Motion to the extent it sought to dismiss the bankruptcy cases under Section 1112(b) and denied their motion to stay the bankruptcy cases.

---

[5] On December 26, 2023, the Court so-ordered a stipulation lifting the automatic stay to permit the appeals pending in state court to proceed to final judgment or settlement.

In the 305 Dismissal Motion, Mr. Wang and the Wang Entities addressed the factors to be considered under § 305 and again asserted, among other things, the Managerial Rights Argument, and that the Debtors filed the petitions in bad faith without an intent to reorganize but only to avoid state court litigation, constituting cause to dismiss under § 1112.  (ECF No. 242-1 at 8-18.)  The 305 Dismissal Motion included a footnote acknowledging that these arguments were raised in the prior Dismissal/Lift Stay Motion but were being raised again to address one of the factors to be considered under § 305, and not for the purpose of rearguing the Dismissal/Lift Stay Motion.  (ECF No. 242-1 at n.4.)

Mr. Wang and the Wang Entities further asserted in the 305 Dismissal Motion that the interests of the Debtors and their creditors would be better served by dismissal of the cases. (ECF No. 242-1 at 19-25.)  Further, Mr. Wang and the Wang Entities asserted that the result of the bankruptcy cases would be "substantially change[d]" if the appeals pending in state court were decided in Mr. Wang's favor, thereby negatively impacting the economy and efficiency of administration.  (ECF No.  242-1 at 9-10.)  Additionally, Mr. Wang and the Wang Entities challenged the sale of the Debtors' properties, arguing that that there could be no good faith purchaser because any purchaser would know of Mr. Wang's adverse interests in the properties, that the Debtors may not sell the properties due to noncompliance with securities laws, and that the successful bids at the auctions were lower than the properties' values.  (ECF No. 242-1 at 19-25.)

On February 14, 2024, at a hearing on the First Sanctions Motion, the Court prohibited Mr. Wang from filing further motions in this Court absent prior approval from the Court, subject to further order of the Court, and "So Ordered" the record (the "February 14 Order").  Thereafter,

on March 1, 2024, Mr. Wood filed a motion to be relieved as counsel to the Wang Entities and the Law Firm.  (ECF No. 298.)

On March 4, 2024, the Movants filed a motion for sanctions against the Respondents under Bankruptcy Rule 9011 (the "Second Sanctions Motion," and together with the First Sanctions Motion, the "Sanctions Motions").  (ECF No. 299.)  On March 11, 2024, the Respondents filed opposition to the Second Sanctions Motion.  (ECF No. 303.)  On March 22, 2024, the Movants filed a reply.  (ECF No. 318.)

On March 12, 2024, the Debtors filed opposition to the 305 Dismissal Motion, and the Sole Member and Lender filed a joinder to that opposition.  (ECF Nos. 304, 306.)  On March 13, 2024, Mr. Wang and the Wang Entities filed a reply.  (ECF No. 310.)

On July 29, 2024, the Court held a hearing on the 305 Dismissal Motion and the Sanctions Motions.  At that hearing, Mr. Wang withdrew the 305 Dismissal Motion, stating that it was moot because the sales of the properties had already closed.  (Tr. 7/29/24 at 34, ECF No. 562.)  Additionally, the Court ruled on the Sanctions Motions, finding that the Respondents' repeated frivolous assertions of the Managerial Rights Argument and any other previously rejected arguments constituted bad faith.  (Tr. 7/29/24 at 47, ECF No. 562.)  The Court further found that the 305 Dismissal Motion was frivolous and that the Respondents violated Rule 9011 by failing to timely withdraw it after being served with a safe harbor letter.  (Tr. 7/29/24 at 50-51, ECF No. 562.)  The fact that the 305 Dismissal Motion was withdrawn on the record at that hearing, months after it was filed, was "too little, too late."  (Tr. 7/29/24 at 50, ECF No. 562.)  The Court directed the Movants to supplement the Sanctions Motions detailing the costs and fees incurred as a result of the sanctionable conduct that formed the basis of each motion.  Thereafter, a hearing was held on August 27, 2024, and the Sanctions Motions were marked submitted.

<u>DISCUSSION</u>

I.    <u>First Sanctions Motion</u>

A.  <u>Argument</u>

In the First Sanctions Motion, the Movants seek the imposition of sanctions under 28 U.S.C. § 1927 and the Court's inherent power based upon the Respondents' repeated assertions, in this Court and other courts, of the arguments previously rejected, such as the Managerial Rights Argument and the Venue Argument.  The Movants contend that the Respondents' assertion of the frivolous arguments constitute bad faith and vexatious litigation tactics because they were interposed to delay and to interfere with the progress of these bankruptcy cases. According to the Movants, the Respondents' assertion of those arguments is consistent with the Respondents' "scorched earth litigation approach and gamesmanship in this Court" and other courts that have presided over the Respondents' dispute with the Lender.  (ECF No. 196-2 at 3.) The Movants allege that the Respondents, frivolously and in bad faith, asserted the Managerial Rights Argument, which had been rejected by other courts and by this Court, in opposition to nearly every motion filed in these cases, including the Debtors' Retention Applications and the Cash Collateral Motion.  The First Sanctions Motion further asserts that the Respondents appealed virtually every order and sought stays in connection with those appeals, which were without merit.  The Movants note that the Respondents untimely filed notices of appeal from the retention orders.

The Movants allege that, in addition to seeking to delay the cases, the Respondents raised their meritless claims in order to enable Clean Air 3, which operated the public parking garage owned by Debtor Clean Air 2, to avoid paying any rent, leaving Clean Air 2 with no revenue, a condition which led to the filing of the Debtors' chapter 11 petitions.  The Movants further

alleged that Clean Air 3 continued to divert hundreds of thousands of dollars to Mr. Wang, who owns and controls Clean Air 3 and Clean Air Corp.

The Respondents assert that they did not engage in vexatious litigation in this Court or any other court, that they have the right to appeal rulings, and that this Court cannot sanction them for actions taken in other courts. The Respondents further argue that neither <u>Rooker-Feldman</u> nor collateral estoppel applies to the arguments they raised in these bankruptcy cases and assert that they have not acted in bad faith. In support of their argument that they have not acted in bad faith and have not asserted frivolous arguments, the Respondents point to the fact that the automatic stay was lifted to pursue the appeals on their motions.[6]

This Court notes that, in opposition to the First Sanctions Motion, the Respondents again assert precluded arguments, including the Managerial Rights Argument, that form the basis of the First Sanctions Motion. However, the Respondents acknowledge that the Managerial Rights Argument and Buyback Right Argument were already ruled upon:

> To be clear, Respondents do not deny that the issues related to management and buyback rights were ruled upon by Hon. Schecter in [one of the state court cases]; a ruling later acknowledged by Hon. Livote in [another state court] case. However, many of the arguments that Respondents raised in their papers revolve around the 'possibility' that in the appeal cases, the Appellate Division, First Department might find that the New York County Court had lacked jurisdiction, such a ruling would necessarily nullify all of Hon. Schecter's rulings.

(ECF No. 223 at ¶ 15.)

---

[6] The Movants do not allege that Mr. Wang's request for stay relief to pursue the appeals was frivolous or made in bad faith.

B. <u>Legal Standard and Analysis</u>

The Court may impose sanctions under 28 U.S.C. § 1927 and/or the Court's inherent power.

Section 1927 of Title 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"[B]ankruptcy courts may sanction attorneys who unreasonably and vexatiously multiply court proceedings pursuant to 28 U.S.C. § 1927." <u>In re Green</u>, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010) (citing <u>In re Cohoes Indus. Terminal, Inc.</u>, 931 F.2d 222, 230 (2d Cir.1991)). <u>See also</u> <u>In re Truong</u>, No. 07–12194, 2008 WL 1776227, at *5 (Bankr. S.D.N.Y. Apr. 14, 2008) ("A bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 under the same standard as a district court.")).  The court may also impose the sanctions against a law firm, <u>Enmon v. Prospect Cap. Corp.</u>, 675 F.3d 138, 147 (2d Cir. 2012), and against a *pro se* litigant who is a lawyer, <u>Sassower v. Field</u>, 973 F.2d 75, 80 (2d Cir. 1992).  Sanctions are warranted under 28 U.S.C. § 1927 when an "attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." <u>Revson v. Cinque & Cinque</u>, 221 F.3d 71, 79 (2d Cir. 2000)).  This statute serves to "to deter unnecessary delays in litigation." <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1273 (2d Cir. 1986) (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Ad. News, 2716, 2782).

Additionally, a court may impose sanctions pursuant to its inherent power, which is "derive[d] from the fact that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Schlaifer Nance & Co. v. Est. of Warhol, 194 F.3d 323, 336 (2d Cir. 1999) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri, 803 F.2d at 1273.

The same standard applies to whether to impose sanctions under § 1927 or under the Court's inherent power. Green, 422 B.R. at 474 (citing Oliveri, 803 F.2d at 1273). "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) (quoting Schlaifer Nance, 194 F.3d at 336). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Sierra Club v. U.S. Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985) (citing cases).

"Under this test, a claim is "entirely without color" when it lacks any legal or factual basis." Id. With respect to bad faith, the Second Circuit has "interpreted the bad faith standard restrictively," Eisemann, 204 F.3d at 396, and requires a court to make findings of bad faith with a "high degree of specificity," Schlaifer Nance, 194 F.3d at 338. "Bad faith may be inferred where the conduct at issue 'is completely without merit.'" Kramer v. Mahia (In re Khan), 488 B.R. 515, 530 (Bankr. E.D.N.Y. 2013) (citing In re 60 E. 80th St. Equities, Inc., 218 F.3d 109,

17

116 (2d Cir.2000)), aff'd sub nom. Dahiya v. Kramer, No. 13-CV-3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), aff'd sub nom. In re Khan, 593 F. App'x 83 (2d Cir. 2015).  Acts that constitute bad faith include "resubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand." Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995) (quoting Hudson Motors P'ship v. Crest Leasing Enters., 845 F. Supp. 969, 978 (E.D.N.Y.1994) (internal citations omitted).

At the outset, the Court declines to impose sanctions based upon the Respondents' conduct and filings in other courts.  This Court need not look further than its own docket to find ample grounds to sanction the Respondents under 28 U.S.C. § 1927 and/or the Court's inherent authority.

It cannot be disputed that the Respondents have repeatedly raised the Managerial Rights Argument, the Venue Argument, and challenges to the underlying UCC sale of Mr. Wang's membership interests in the Debtors throughout these bankruptcy cases.  Those arguments were raised as opposition to almost every motion filed by the Debtors in these cases, including the routine motions to retain professionals and to approve the use of cash collateral, notwithstanding the inapplicability of the arguments to the legal standard relevant to such motion and - more shockingly - despite the clear rejection of the Managerial Rights Argument and the Venue Argument by the state court, which ruling must be given full faith and credit and preclusive

effect under the doctrine of collateral estoppel.[7]  Notably, although the Respondents asserted these arguments at various times to challenge the validity of the bankruptcy petitions, the Respondents did not file a procedurally proper motion to dismiss these cases until the cases were pending for eight months and the Debtors' properties were to be sold at public auction.

In addition to the Respondents' repeated assertions of the Managerial Rights Argument, the Venue Argument, challenges to the Lender's UCC sale of Mr. Wang's membership interests, and other arguments at times when they were irrelevant to the question at hand, those arguments were also utterly meritless in this Court because this Court is precluded from granting any relief based on those arguments unless, and until, Mr. Wang succeeds on appeal in state court – which has not happened.  See Clean Air Car Serv. & Parking Branch Three, LLC v. Operr Plaza, LLC, No. 24-CV-5445 (FB), 2025 WL 1181698, at *3 (E.D.N.Y. Apr. 23, 2025) (reciting that Mr. Wang did not succeed on appeal with respect to Debtor Operr Plaza (citing Operr Plaza, LLC v. Wang, 208 N.Y.S.3d 196, 196 (N.Y. App. Div 1st Dep't 2024) and Operr Plaza, LLC. v. Wang, 42 N.Y.3d 999 (N.Y. 2024))).  Indeed, the District Court noted in ruling on one of the Respondents' many appeals in these cases that the Managerial Rights Argument and the arguments based on the Debtors' operating agreements were "meritless" and were "rejected by every bankruptcy, district, and Circuit judge to have heard them."  Clear Air Car Service & Parking Branch Three, LLC v. Clean Air Service & Parking Branch Two, LLC, 24-CV-05444 (OEM), 2024 WL 4118982, at *1 (E.D.N.Y. Sept. 9, 2024).  And, more recently, the Second

---

[7] Pursuant to the Full Faith and Credit Clause of the Constitution, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." Baker v. Gen. Motors Corp., 522 U.S. 222, 233 (1998).  "For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force." Id. The fact that Mr. Wang appealed the state court's determination that he lost his membership interests and managerial rights in the Debtors does not avoid the application of the Full Faith and Credit Clause or the doctrine of collateral estoppel. In re Best Payphones, Inc., No. 01-15472 (SMB), 2002 WL 31767796, at *5 (Bankr. S.D.N.Y. Dec. 11, 2002) ("Under New York law, a judgment pending appeal is entitled to the same res judicata effect as a final judgment." (citing Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988))).

Circuit rejected Mr. Wang's argument that the Debtors lacked authority to file the bankruptcy petitions.  In re Clean Air Car Service & Parking Branch Two, LLC, No. 24-1738-BK, 2025 WL 1409862, at *2 (2d Cir. May 15, 2025) ("Appellant has failed to establish that Operr Plaza and Clean Air 2 lacked authority to file for bankruptcy.  We therefore conclude that the record before us, including the findings made in the related state court proceedings, amply supports the exercise of jurisdiction over this matter by the Bankruptcy Court.").

The Respondents' repeated assertion of the Managerial Rights Argument and other barred or irrelevant arguments, especially in the context of opposition to the Debtors' routine motions, establishes that the Respondents must have intended to delay these bankruptcy cases with those frivolous arguments, as there was no other reason to raise those arguments at those times.  This Court had already explained to the Respondents that the state court's ruling that Mr. Wang lost his managerial rights and membership interests in the Debtors was on point and precluded this Court from determining otherwise.  It should also be noted that the District Court, when issuing an injunction prohibiting the Respondents from filing further appeals from orders in these bankruptcy cases, likewise determined that the Respondents "have unnecessarily multiplied the instant bankruptcy litigation and prevented the orderly disposition of the estate." Clear Air Car Service & Parking Branch Three, LLC v. Clean Air Service & Parking Branch Two, LLC, 24-CV-05444 (OEM), 2024 WL 4118982, at *3 (E.D.N.Y. Sept. 9, 2024). And, more recently, in appeals prosecuted by Mr. Wang on behalf of Clean Air 3 stemming from the sales of the Debtors' properties in these bankruptcy cases, the Second Circuit noted that Clean Air 3 "has filed frivolous and duplicative motions in this Court," and warned "that the continued filing of frivolous or duplicative motions or other papers could result in the imposition of sanctions, including an award of fees and costs against [Clean Air 3] and [Mr. Wang] or a filing injunction

that would require [Clean Air 3] to obtain permission from this Court prior to filing any further submissions in this Court." <u>Clean Air Car Service & Parking Branch Three, LLC, v. Clean Air Car Service & Parking Branch Two, LLC</u>, Docket Nos. 24-1742 (L), 24-1738 (Con), 24-1743 (Con) (2d Cir. July 10, 2025).

While the Respondents argued at the hearings that the arguments were not asserted in bad faith, but rather raised in order to preserve them for appeal, such assertion does not hold water. (Tr. 2/1/24 at 29-30, ECF No. 245; Tr. 2/14/24 at 87, ECF No. 275.)  Raising precluded arguments that could not have been successful in this Court due to well-established principles of full faith and credit and collateral estoppel cannot legitimately be argued to have been raised in good faith, even if the Respondents hoped they would eventually succeed on appeal.  <u>See Gollomp v. Spitzer</u>, 568 F.3d 355, 369 (2d Cir. 2009) (finding bad faith when counsel asserted a claim despite already being instructed by several courts that similar claims were barred).

For these reasons, sanctions are warranted under 28 U.S.C. § 1927 and the Court's inherent power.  As a sanction, the Respondents shall be prohibited from filing any motion in these cases unless they receive prior authorization from this Court.  Additionally, monetary sanctions are warranted to deter further vexatious conduct.

The Debtors assert that the Respondents' unreasonable, vexatious and sanctionable filings and conduct in this Court that form the basis of the First Sanctions Motion caused Clear Air 2 to incur fees of $131,318.00 and caused Operr Plaza to incur fees of $69,516.50.  (ECF No. 526.) As such, the Debtors request the imposition of sanctions in those amounts against Mr. Wang and the Law Firm with respect to the First Sanctions Motion.[8]  (ECF No. 526.)  Additionally, the

---

[8] Although the Debtors' supplement requested that the sanctions be imposed against Mr. Wang and the Law Firm, the First Sanctions Motion and the Lender and Sole Member's supplement seek the imposition of sanctions against all of the Respondents.

Lender and Sole Member assert that they incurred fees of $144,896.90.  (ECF No. 582.)
However, the Lender and Sole Member did not apportion those fees between the Sanctions
Motions.  The Movants each annexed counsel's time records in support of their requests.

The Respondents opposed the fees sought, reargued the merits of the Sanctions Motions,
and asserted that the supplemental filings by the Movants do not comply with the Court's
instructions to indicate what motion or response had to be made as a result of the sanctionable
filing or conduct.  (ECF No. 536.)

As discussed above, the purpose of sanctions under 28 U.S.C. § 1927 and the Court's
inherent power is to deter future sanctionable conduct.  Oliveri, 803 F.3d at 1273.  Sanctions
should be imposed '"with great caution, so as not to stifle the enthusiasm or chill the creativity
that is the very lifeblood of the law.'"  Palagonia v. Sachem Cent. Sch. Dist., No. 08-CV-0791
(JS)(ETB), 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010) (quoting Romeo v. Sherry, 308
F.Supp.2d 128, 148 (E.D.N.Y.2004)).  Additionally, a court may consider an attorney's resources
when determining the amount of sanctions and "may take into account that respondents' attorney
is a member of a small firm, on whom the effect of a substantial award might well be out of
proportion to the misconduct."  Novelty Textile Mills, Inc. v. Stern, 136 F.R.D. 63, 78 (S.D.N.Y.
1991).

This Court has no doubt that the Movants incurred significant legal fees in connection
with the Respondents' unreasonable and vexatious filings and conduct in this Court for which
they are being sanctioned pursuant to 28 U.S.C. 1927 and/or the Court's inherent power.
However, because the primary purpose of sanctions is to deter future sanctionable conduct, rather
than to make the Movants whole, the Court concludes, after taking into account all
considerations, including that the Respondents are prohibited from filing any motion in these

cases without receiving prior authorization from this Court, that a sanction of $40,000 is appropriate with respect to the First Sanctions Motion.  The Respondents shall be jointly and severally liable for such sanction, and it shall be divided as follows: $15,000 shall be paid to each Debtor, $5,000 shall be paid to the Lender, and $5,000 shall be paid to the Sole Member.[9]

II.    Second Sanctions Motion

A.    Argument

In the Second Sanctions Motion, the Movants seek the imposition of sanctions against the Respondents under Bankruptcy Rule 9011 based upon the filing of the Respondents' 305 Dismissal Motion.  The Respondents have not disputed that the Movants complied with the safe harbor provision imposed by Bankruptcy Rule 9011(c)(1)(A).

The Movants allege that the Respondents raised the frivolous arguments in the 305 Dismissal Motion, despite the rejection of those arguments.  As with the First Sanctions Motion, the Movants assert that the Respondents "have continuously engaged in vexatious, baseless, repetitive and dilatory practices before this Court in a malicious effort to cause delays; to obstruct these proceedings; to increase costs for the Lender, the Sole Member, and the Debtors; and to burden and interfere with this Court's administration of these Bankruptcy Cases."  (ECF No. 299-1 at 5.)  The Second Sanctions Motion also notes the various instances in these cases when the Court explained to the Respondents that the Court cannot undo state court orders and warned of possible sanctions.  (ECF No. 299-1 at 17-22.)

Incredibly, in opposition, the Respondents again raise the arguments that have been raised - and rejected - throughout these cases and by other courts: that the Sole Member was not a good faith buyer at the UCC sale of the membership interests, the Managerial Rights

---

[9] To be clear, the sanctions are imposed against Mr. Wang and the Law Firm pursuant to 28 U.S.C. § 1927 and against all of the Respondents pursuant to the Court's inherent power.

Argument, and the Venue Argument.  (ECF No. 303 at 10-18, 22-23.)  The Respondents contend

that the neither the Rooker-Feldman doctrine nor collateral estoppel bars those arguments.  (ECF

No. 303 at 18-21.)  The Respondents assert that the arguments have a good chance of success on

appeal and, therefore, the Second Sanctions Motion should be denied.  In support, the

Respondents note that they succeeded in obtaining a temporary stay from the District Court on or

about February 21, 2024.[10]  (ECF No. 303 at 26-27.)  The Respondents argue that "this Court

should not only dismiss the frivolous [Second Sanctions] Motion but also should dismiss the

bankruptcy petitions" because the petitions were filed without proper authorization.  (ECF No.

303 at 28.)

> B.      Legal Standard and Analysis

The Court may impose sanctions under Bankruptcy Rule 9011, which provides, in

pertinent part:

> (b) Representations to the Court.
>
> By presenting to the court a petition, pleading, written motion, or
> other document—whether by signing, filing, submitting, or later
> advocating it—an attorney or unrepresented party certifies that, to
> the best of the person's knowledge, information, and belief formed
> after an inquiry reasonable under the circumstances:
>
>     (1) it is not presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase litigation
> costs;
>
>     (2) the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous argument to extend,
> modify, or reverse existing law, or to establish new law; [and]

---

[10] The sale of each Debtor's property had already closed on February 20, 2024.  The District Court, in response to a motion by Mr. Wang and Clean Air 3 for a stay of the sale of Clean Air 2's property pending appeal, issued an order on February 21, 2024, temporarily enjoining the eviction of the occupants of Clean Air 2's property.  That temporary injunction was lifted on March 13, 2024, when the District Court denied the motion for a stay pending appeal.

(3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Bankr. P. 9011(b).[11]

The standard for Bankruptcy Rule 9011 is the same as Rule 11 of the Federal Rules of Civil Procedure and, therefore, the "application of [Bankruptcy] Rule 9011 is informed by Rule 11 jurisprudence." Cohoes, 931 F.2d at 227. The main purpose of Bankruptcy Rule 9011, like Rule 11, is to deter baseless and abusive litigation tactics. See In re Omega Trust, 120 B.R. 265, 271 (S.D.N.Y. 1990).

Bankruptcy Rule 9011(b)(1), or the improper purpose clause, focuses on abusive litigation tactics "'whether or not [the paper] is supported by the facts and the law, and no matter how careful the pre-filing investigation.'" In re Meltzer, 516 B.R. 504, 520 (Bankr. N.D. Ill. 2014) (quoting In re Ryan, 411 B.R. 609, 615 (Bankr. N.D. Ill. 2009)). See also Desiderio v. Parikh (In re Parikh), 508 B.R. 572, 585 (Bankr. E.D.N.Y. 2014) ("[F]rivolity is not a necessary finding under the 'improper purpose' prong of Rule 9011(b).")

However, with respect to the other provisions of Bankruptcy Rule 9011(b), "[a]n attorney must determine, by independently verifying publicly available facts, that the client's representations are 'objectively reasonable and investigate further, if any inconsistencies are raised, by asking questions, obtaining additional documents, or by some other means.'" In re Zucaro, 615 B.R. 150, 157 (Bankr. E.D.N.Y. 2020) (quoting In re Beinhauer, 570 B.R. 128, 137 (Bankr. E.D.N.Y. 2017)). See also Schmelcher v. Cnty. of Oneida, No. 6:15-CV-00245 (MAD), 2016 WL 297713, at *3 (N.D.N.Y. Jan. 22, 2016) ("[T]the central question in imposing FRBP

---

[11] Rule 9011 was amended, effective December 1, 2024, after the Second Sanctions Motion was filed. Because the amendment is stylistic only, and is not substantive, the Court will quote the amended rule in this decision.

9011(b)(2) sanctions is 'whether a reasonable attorney could have concluded that the facts supporting the claim might be established[.]'" (quoting <u>Nemeroff v. Abelson</u>, 620 F.2d 339, 348 (2d Cir. 1980))).

"[A]warding sanctions pursuant to the 'improper purpose' prong of Rule 9011(b)(1) requires a finding of subjective bad faith.  This differs from sanctions under Rule 9011(b)(2), where an attorney fails [to] make a reasonable inquiry into whether claims asserted are 'warranted in law,' which uses an objective bad faith standard that requires frivolousness." <u>Parikh</u>, 508 B.R. at 584.  <u>But see</u> <u>Moxey v. Pryor</u>, No. 15-CV-4632 (JS), 2017 WL 1229735, at *4 (E.D.N.Y. Mar. 31, 2017) ("[T]he Second Circuit has presented 'two separate standards of culpability . . . depending upon who initiates sanction proceedings': (1) an 'objective unreasonableness' standard for party-initiated motions and (2) a 'heightened standard of "subjective bad faith"' for court-initiated motions." (quoting <u>HD Brous & Co., Inc. v. Mrzyglocki</u>, No. 03-CV-8385, 2004 WL 1367451, at *1–2 (S.D.N.Y. June 16, 2004) (citing <u>In re Pennie & Edmonds LLP</u>, 323 F.3d 86 (2d Cir. 2003))))).  The objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" <u>In re Intercorp Int'l</u>, 309 B.R. 686, 694 (Bankr. S.D.N.Y. 2004) (discussing Rule 11) (quoting Fed. R. Civ. P. 11 advisory committee's note (1993)).

In the Second Circuit, the standard for imposing sanctions under Rule 9011(b)(2) requires that a party "has submitted a claim that has no chance of success under existing precedents and that fails to advance a reasonable argument to extend, modify or reverse the law as it stands." <u>Cohoes</u>, 931 F.2d at 227 (internal quotations omitted).  It must be "patently clear that a claim has absolutely no chance of success." <u>In re Spectee Group, Inc.</u>, 185 B.R. 146, 159 (Bankr. S.D.N.Y. 1995) (internal quotations omitted).  "[C]ontinuing to press an obviously meritless

lawsuit [or motion] does tend to indicate bad faith and further supports the imposition of a rule 11 sanction." O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 709 (2d Cir. 1990).

If a violation of Bankruptcy Rule 9011(b) is found, the court has discretion whether to impose sanctions. In re Belmonte, 524 B.R. 17, 30 (Bankr. E.D.N.Y. 2015). "Because the rule is designed to deter rather than compensate, any sanctions imposed should be no greater than necessary to effectuate the goal of deterrence." In re Fierro, 615 B.R. 403, 411 (Bankr. E.D.N.Y. 2020). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Palagonia, 2010 WL 811301, at *2 (quoting Lipin v. Hunt, 573 F.Supp.2d 836, 843-44 (S.D.N.Y.2008)). However, compensation "is considered a secondary purpose." Parikh, 508 B.R. at 584.

"'[G]iven the underlying purpose of sanctions—to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations—it lies well within the . . . court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay.'" Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 179 (2d Cir. 2012) (first alteration in original) (quoting Oliveri, 803 F.2d at1281). Importantly, "[s]anctions, under any authority, should not be imposed lightly." Khan, 488 B.R. at 528. "They are the exception, not the norm, even in the face of aggressive litigation tactics and strategy." Id.

At the hearing held on July 29, 2024, the Court determined that the 305 Dismissal Motion was frivolous, thereby violating Bankruptcy Rule 9011(b)(2). Although the 305 Dismissal Motion was not denied on the merits because it was withdrawn on the record, it may nonetheless

give rise to sanctions under Bankruptcy Rule 9011 because it was not withdrawn by the Respondents within the safe harbor provision's period of 21 days of being served with the Second Sanctions Motion and was only withdrawn once rendered moot by the sales of the Debtors' properties.

Relief under 11 U.S.C. § 305 is limited "to the rare situation" where the interests of creditors and the debtor would be better served by abstention, dismissal, or suspension of the bankruptcy case.  In re Sapphire Dev., LLC, 523 B.R. 1, 5 (D. Conn. 2014).  Boiled down to its essence, the 305 Dismissal Motion was based on the dispute between the Lender, the Sole Member, and Mr. Wang.  The 305 Dismissal Motion was filed on February 2, 2024, the day after the District Court issued a judgment denying the Respondents' motion for leave to appeal this Court's denial of the Respondents' motion to dismiss the cases under 11 U.S.C. § 1112(b). Therefore, the 305 Dismissal Motion appears to have been a second attempt to dismiss these bankruptcy cases and a desperate, last-ditch effort to prevent the closing on the sales of the Debtors' properties.

While the 305 Dismissal Motion cited the factors to be considered under 11 U.S.C. § 305, it largely recycled and retrofit into those factors the arguments that were already rejected by the state court and by this Court.  There is no doubt that relief under 11 U.S.C. § 305 would have only served the interests of Mr. Wang and the Wang Entities, and not those of the Debtors and the other creditors.  Notably, subsequent to the filing of the 305 Dismissal Motion, the Debtors' plans were accepted by creditors and confirmed by the Court.

To the extent the Respondents assert that the arguments raised in the 305 Dismissal Motion are not sanctionable under Rule 9011 because they were raised in order to preserve them for appeal, such argument is rejected.  A party "simply cannot under the guise of preserving

arguments reargue the same position over and over again." McCabe v. Lifetime Ent. Servs., No. 17-CV-908-ERK-SJB, 2018 WL 1521860, at *14 (E.D.N.Y. Jan. 4, 2018), recommendation adopted, 17-cv-908 (E.D.N.Y. Mar. 26, 2018), aff'd, 761 F. App'x 38 (2d Cir. 2019). Doing so is sanctionable under Rule 9011. See McCabe, 2018 WL 1521860, at *14.

Given the conclusion that the 305 Dismissal Motion was frivolous and violated Bankruptcy Rule 9011(b)(2), the Court must next determine the appropriate sanction to impose.

Rule 9011(c) provides, in pertinent part:

> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that (b) has been violated, the court may, subject to the conditions in this subdivision (c), impose an appropriate sanction on any attorney, law firm, or party that committed the violation or is responsible for it. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
> . . .
> (4) Nature of a Sanction; Limitations.
> (A) In General. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or deter comparable conduct by others similarly situated. The sanction may include:
> (i) a nonmonetary directive;
> (ii) an order to pay a penalty into court; or
> (iii) if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of all or part of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Bankr. P. 9011(c)(1), (4)(A).

As with this First Sanctions Motion, this Court will again prohibit the Respondents from filing any motion in these cases absent prior authorization by this Court. Additionally, monetary sanctions are warranted against Mr. Wang and the Law Firm to further ensure that they do not run afoul of Bankruptcy Rule 9011 in the future.[12]

---

[12] Bankruptcy Rule 9011(c)(4)(B) does not permit monetary sanctions for violations of Bankruptcy Rule 9011(b)(2) to be imposed on a represented party.

The Debtors assert that, as a result of the filing of the 305 Dismissal Motion, Clean Air 2 incurred legal fees of $9,440.50 and that Operr Plaza incurred legal fees of $8,959.50.  As noted earlier, the Lender and Sole Member asserted that they incurred fees totaling $144,896.90 as a result of the Sanctions Motions, but do not specify the amount of fees incurred as a result of the 305 Dismissal Motion.  In any event, as with the First Sanctions Motion, the legal fees incurred by the Movants exceed the sanction necessary to deter Mr. Wang and the Law Firm from violating Bankruptcy Rule 9011 in the future.  Rather, the Court shall impose a sanction of $10,000 against Mr. Wang and the Law Firm, for which they are jointly and severally liable, to be paid as follows: $3,500 shall be paid to each Debtor, $1,500 shall be paid to the Lender; and $1,500 shall be paid to the Sole Member.

<u>CONCLUSION</u>

For the foregoing reasons, the Sanctions Motions are granted as provided herein.  The Court will issue an order consistent with this decision.

Dated: September 5, 2025
     Brooklyn, New York

Nancy Hershey Lord
**Nancy Hershey Lord**
**United States Bankruptcy Judge**